1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR ARREDONDO-VIRULA, | ) 1:09-cv—02049-AWI-SKO-HC |
| | ) |
| Petitioner, | ) ORDER DEEMING RESPONDENT'S MOTION |
| | ) TO DISMISS TO BE AN ANSWER TO THE |
| | ) PETITION (DOC. 12) |
| v. | ) |
| | ) FINDINGS AND RECOMMENDATION TO |
| NEIL H. ADLER, Warden, | ) DENY THE PETITION FOR WRIT OF |
| | ) HABEAS CORPU8S (DOC. 1) |
| Respondent. | ) |
| | ) OBJECTIONS DUE WITHIN THIRTY (30) |
| | ) DAYS |

Petitioner is a federal prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304. Pending before the Court is Respondent's motion to dismiss the petition filed on March 11, 2010. On April 22, 2010, Petitioner filed documents entitled "PETITIONER'S MOTION TO DISMISS RESPONDENT'S MOTION TO DISMISS ARTICULATED PURSUANT TO FRCP 12(B)(6)" (doc. 14, 1), in which Petitioner opposed Respondent' motion to dismiss. (<u>Id.</u> at 1.) No reply was filed.

///

1

I.   Jurisdiction

A.   Subject Matter Jurisdiction

Relief by way of a writ of habeas corpus extends to a prisoner in custody under the authority of the United States who shows that the custody violates the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2241(c)(3).  Although a federal prisoner who challenges the validity or constitutionality of his conviction must file a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255, a federal prisoner challenging the manner, location, or conditions of the execution of a sentence must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241.  Hernandez v. Campbell, 204 F.3d 861, 864-65 (9th Cir. 2000).

Here, Petitioner alleges that he was denied due process of law under the Fifth Amendment in connection with a prison disciplinary hearing and seeks expungement of the finding and restoration of good-time credits and visitation privileges lost as a result of the finding.  (Pet. 9.)  A due process claim concerning parole, good time, or other rules administered by a prison or penal administrator that challenges the duration of a sentence is a cognizable claim of being in custody in violation of the Constitution pursuant to 28 U.S.C. § 2241(c)(3).  See, e.g., Superintendent v. Hill, 472 U.S. 445, 454 (1985) (determining procedural due process claim concerning disciplinary procedures and findings); Wilkinson v. Dotson, 544 U.S. 74, 88 (2005) (Kennedy, J., dissenting).  If a constitutional violation has resulted in the loss of time credits, it affects the duration of a sentence, and the violation may be remedied by way of a

2

1  petition for writ of habeas corpus.  <u>Young v. Kenny</u>, 907 F.2d

2  874, 876-78 (9th Cir. 1990).

3      Accordingly, the Court concludes that it has subject matter

4  jurisdiction over the petition.

5          B.   <u>Jurisdiction over the Person</u>

6      Title 28 U.S.C. § 2241(a) provides that writs of habeas

7  corpus may be granted by the district courts "within their

8  respective jurisdictions."  A writ of habeas corpus operates not

9  upon the prisoner, but upon the prisoner's custodian.  <u>Braden v.</u>

10 <u>30th Judicial Circuit Court of Kentucky</u>, 410 U.S. 484, 494-495

11 (1973).  A petitioner filing a petition for writ of habeas corpus

12 under § 2241 must file the petition in the judicial district of

13 the petitioner's custodian.  <u>Brown v. United States</u>, 610 F.2d

14 672, 677 (9th Cir. 1990).  The warden of the penitentiary where a

15 prisoner is confined constitutes the custodian who must be named

16 in the petition, and the petition must be filed in the district

17 of confinement.  <u>Id.</u>; <u>Rumsfeld v. Padilla</u>, 542 U.S. 426, 446-47

18 (2004).  It is sufficient if the custodian is in the territorial

19 jurisdiction of the court at the time the petition is filed;

20 transfer of the petitioner thereafter does not defeat personal

21 jurisdiction that has once been properly established.  <u>Ahrens v.</u>

22 <u>Clark</u>, 335 U.S. 188, 193 (1948), overruled on other grounds in

23 <u>Braden v. 30th Judicial Circuit Court of Kentucky</u>, 410 U.S. at

24 193 (citing <u>Mitsuye Endo</u>, 323 U.S. 283, 305 (1944)); <u>Francis v.</u>

25 <u>Rison</u>, 894 F.2d 353, 354 (9th Cir. 1990).  A failure to name and

26 serve the custodian deprives the Court of personal jurisdiction.

27 <u>Johnson v. Reilly</u>, 349 F.3d 1149, 1153 (9th Cir. 2003).

28     Here, at all pertinent times, Petitioner was incarcerated at

1 the Taft Correctional Institution (TCI), which is located within

2 the Eastern District of California.  Petitioner named Neil H.

3 Adler, the Warden of TCI, as Respondent.

4     Accordingly, the Court concludes that it has personal

5 jurisdiction over the custodian.

6     II.   <u>Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6)</u>

7     In the motion before the Court, Respondent purports to

8 proceed pursuant to Fed. R. Civ. P. 12(b)(6), which provides for

9 the making of a motion to dismiss for failure to state a claim

10 upon which relief can be granted.  Such a motion tests the legal

11 sufficiency of the claim or claims stated in the complaint.  In

12 considering a motion under Fed. R. Civ. P. 12(b)(6), a court must

13 construe the complaint in the light most favorable to the

14 plaintiff; accept all well-pleaded factual allegations as true;

15 and determine whether the plaintiff can prove any set of facts to

16 support a claim that would merit relief.  <u>Cahill v. Liberty Mut.</u>

17 <u>Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir. 1996).

18     The Federal Rules of Civil Procedure are not necessarily

19 fully applicable to the present proceeding.  The rules governing

20 civil procedure may be applied to a proceeding governed by the

21 Rules Governing Section 2254 Cases in the United States District

22 Courts (Habeas Rules) to the extent that they are not

23 inconsistent with any statutory provisions or the rules governing

24 cases brought pursuant to 28 U.S.C. §§ 2254 or 2255, and where

25 the practice in habeas proceedings has previously conformed to

26 the practice in civil actions.  Habeas Rule 12;[1] Fed. R. Civ. P.

27

28     [1] The Rules Governing Section 2254 Cases may be applied to petitions brought pursuant to § 2241.  Habeas Rule 1(b).

4

81(a)(4).  The advisory committee's notes caution that the civil rules apply only when it would be appropriate and would not be inconsistent or inequitable in the overall framework of habeas corpus.  Habeas Rule 12 Advisory Committee's Note; <u>Mayle v. Felix</u>, 545 U.S. 644, 654-655 n. 4 (2005).

The Supreme Court has characterized as erroneous the view that a Rule 12(b)(6) motion is appropriate in a habeas corpus proceeding.  <u>See</u>, <u>Browder v. Director, Ill. Dept. of Corrections</u>, 434 U.S. 257, 269 n. 14 (1978).  However, in light of the broad language of Rule 4, it has been held in this circuit that motions to dismiss are appropriate in cases that proceed pursuant to 28 U.S.C. § 2254 and present issues of failure to exhaust state remedies, <u>O'Bremski v. Maass</u>, 915 F.2d 418, 420 (9th Cir. 1990 (a motion to dismiss for failure to raise any issue of federal law, which was based on the insufficiency of the facts as alleged in the petition to justify relief as a matter of law, was evaluated under Rule 4); <u>White v. Lewis</u>, 874 F.2d 599, 602-03 (9th Cir. 1989) (procedural default in state court); <u>Hillery v. Pulley</u>, 533 F.Supp. 1189, 1194 n. 12 (E.D.Cal. 1982) (a motion to dismiss for failure to exhaust state remedies was appropriately considered after receipt of evidence pursuant to Rule 7(a) to clarify whether or not the possible defect, not apparent on the face of the petition, might preclude a hearing on the merits, and after the district court had determined that summary dismissal was inappropriate).

In the present case, the Court has already undertaken to screen the petition pursuant to Habeas Rule 4, which requires the Court to dismiss a petition if it plainly appears from the

petition and any attached exhibits that the petitioner is not entitled to relief in the district court.   The Court necessarily had to screen the petition before it issued its order of January 13, 2010, directing Respondent to file a response to the petition.   Thus, proceeding pursuant to Rule 12(b)(6) would be repetitive and unnecessary.

In response to the motion, Petitioner argues that the allegations of the petition are sufficient to state a claim, and he cites to supporting cases.   (Opp. 3-5.)   In the petition it is alleged that a prison administrator's disciplinary finding that Petitioner violated Prohibited Act Code 205 by engaging in sexual acts violated Petitioner's right to due process of law because the finding was 1) unsupported by some evidence of guilt, and 2) imposed not by an employee of the Bureau of Prisons (BOP), but rather by an employee of a private corporation that managed the prison who lacked the legal authority to impose discipline. Petitioner does not dispute the authenticity of the record of the proceedings that was submitted by Respondent in support of the motion to dismiss except to challenge the reliability of the principal evidence of his having committed the prohibited act, namely, an alleged admission made when exiting the visitation room that the bulge in his pants was from contact with a female visitor.   Petitioner argues that the evidence, which was relied upon by the prison's hearing officer, was impossible or inherently improbable due to a language barrier between the officer and Petitioner and thus was insufficient to constitute the required "some evidence" to support the disciplinary finding. (Pet. 3.)

6

1    In a manner inconsistent with a motion pursuant to Rule

2  12(b)(6), Respondent submitted evidence extraneous to the

3  petition, including documentation of not only the disciplinary

4  process but also the employment of the disciplinary hearing

5  officer and his certification status with respect to acting as a

6  hearing officer. (Mot. Exs. A-D.) Respondent addresses the

7  merits of the constitutional adequacy of the disciplinary process

8  and the evidence relied upon as well as the issue concerning the

9  hearing officer's legal authority to proceed. (Mot. 4-8.)

10    The Court therefore concludes that Respondent is actually

11  arguing the merits of the petition. The factual matter set forth

12  in support of the motion to dismiss actually serves as an answer

13  in this proceeding. Review of all the papers reveals that

14  Petitioner does not dispute the factual record, but rather argues

15  that the proceedings and evidence reflected therein were

16  constitutionally inadequate.

17    A court has inherent power to control its docket and the

18  disposition of its cases with economy of time and effort for both

19  the court and the parties. Landis v. North American Co., 299

20  U.S. 248, 254-255 (1936); Ferdik v. Bonzelet, 963 F.2d 1258, 1260

21  (9th Cir. 1992). Given the positions of the parties, the Court

22  concludes that it would be wasteful of the resources of the

23  parties and the Court simply to consider the motion to dismiss on

24  narrow, strictly procedural grounds and then require Respondent

25  to file an answer. It does not appear that any additional

26  factual matter would be pertinent to the claims before the Court

27  or that the parties desire to bring any further facts before the

28  Court. Respondent's position is essentially that on the basis of

7

all the evidence in the record, Petitioner received all the
process that was due; Petitioner's position is that on the basis
of all the evidence in the record, Petitioner's right to due
process was violated by an absence of evidence to support the
disciplinary finding, and the hearing officer lacked the
authority to determine the violation.  It does not appear that
Petitioner will suffer any prejudice if the Court proceeds to
determine the merits of the petition.  Petitioner had a full
opportunity to support his contentions in the petition and to
argue the legal points in his opposition to the motion to
dismiss.  There does not appear to be any material dispute as to
the evidence that was presented and relied upon in the
disciplinary proceedings; rather, the parties disagree on the
legal significance of the evidence.

     Historically, only two types of dispositions were available
for habeas petitions: either summary dismissal, or a decision
after a full hearing.  <u>Hillery v. Pulley</u>, 533 F.Supp. 1189, 1196
(E.D.Cal. 1982).  However, Habeas Rule 7 permits expansion of the
record by the submitting additional materials relevant to the
merits of the petition, including documentary exhibits and
evidentiary documents such as sworn answers to interrogatories
and affidavits.  Habeas Rule 7(a), (b).[2]  One purpose of
expanding the record is to enable a judge to dispose of some
habeas petitions that are not dismissed on the pleadings, and

---

[2] The party against whom the additional materials are offered must have
an opportunity to admit or deny their correctness.  Habeas Rule 7(c).  All
materials to be included in the record must be submitted to the party against
whom they are to be offered.  Habeas Rule 7 Advisory Committee's Note.

1 to do so without the time and expense required for an evidentiary
2 hearing.  Habeas Rule 7 Advisory Committee's Note.

3     In this case, the Court's order directing the filing of a
4 response resulted in the expansion of the record which, in view
5 of the absence of a material issue of fact concerning the
6 authenticity or contents of that record, permits consideration of
7 the merits of the petition without delay.

8     Accordingly, the Court DEEMS the motion to dismiss to be an
9 answer that responds to the petition.  The Court will consider
10 Petitioner's opposition as well as the petition.

11     The Court will proceed to determine the merits of the
12 petition.  It does not appear that any prejudice would result to
13 Petitioner from proceeding to determine the merits of the
14 petition.

15     III.   <u>Factual Summary</u>

16     According to the incident report of Officer A. Gleason dated
17 March 14, 2009 (Mot. Ex. A), while working at TCI's main
18 visitation that day, Officer Gleason saw Petitioner approaching
19 the visitation desk with his visitors.  Gleason could see a large
20 bulge in the front of Petitioner's pants.  Gleason reported that
21 he spoke to Petitioner, who admitted that the bulge was from his
22 penis being erect and further admitted that it had been caused by
23 his female visitor's rubbing his penis while they were in line to
24 exit visitation.  (Mot. Ex. A 2.)

25     After delivery of the report to Petitioner, it was reported
26 by the chairman of the unit discipline committee (UDC) who
27 initially reviewed Petitioner's case that Petitioner stated to
28 the committee the following:

> This is false, I never told the c/o that my
> erection was caused by my visitor rubbing my
> penis while they were in line.  I do accept that
> was penis (sic) was erect[.]  I did not realized (sic)
> I was erect until the c/o pointed it out.

(Id.)  The UDC referred the charge to the disciplinary hearing

officer (DHO) for further hearing because if Petitioner were

found guilty, the severity of the offense warranted greater

sanctions than were available the level of the UDC.  (Id.)

The DHO's report dated April 23, 2009, was delivered to

Petitioner on April 30, 2009.  It shows that on the date of the

offense, Petitioner received advanced written notice of the

charge, a violation of Prohibited Acts Code 205, engaging in

sexual acts.  (Mot. Ex. B 4.)  Petitioner was advised of his

rights before the DHO by a counselor on March 18, 2009.  (Id.)

The hearing before the DHO was held on March 31, 2009.

Petitioner waived his right to a staff representative, requested

no witnesses, and denied the charge, saying, "[T]he officer

pulled me aside and I apologized.  I wasn't aware I had an

erection."  (Id.)

The DHO considered the incident report and investigation and

found that the act was committed as charged.  (Id. at 5.)  In so

finding, the DHO relied on Officer Gleason's incident report of

Petitioner's admission, Petitioner's statement at the DHO hearing

that he had apologized upon being pulled aside, and Petitioner's

assertion that he had not known that he had an erection.  (Id.)

The DHO wrote:

> The DHO has deemed your denials not credible.
> First, you admitted to the reporting officer that
> your female visitor was rubbing your penis while
> in line.  Second, you claim to have not known you
> had an erection.  Any reasonable person can conclude

1    that a man can't help but know when he has an erection.

2    Therefore, having considered all relevant evidence,
     the DHO finds the greater weight of the evidence
3    supports the finding that you did commit the prohibited
     act of Engaging in a Sexual Act, code 205.

4

5    (Id.)

6        The DHO imposed fifteen (15) days of disciplinary

7    segregation, twenty-seven (27) days of disallowance of good

8    conduct time, and a loss of visitation privileges for one (1)

9    year.  (Id.)  The DHO explained the choice of sanctions as

10   follows:

11   You were sanctioned to punish you and as a deterrent
     to commit another institutional rule violation.  This
     type of behavior creates an unsafe environment for
12   inmates and staff.  Your sexual actions in visitation
     is (sic) a serious offense.  Inmates are often assaulted
13   by inmates whose family members and children witnesses
     (sic) the sexual act.  This type of behavior will
14   not be tolerated.

15   (Id. at 6.)

16       Petitioner was given a copy of the DHO's report and was

17   informed of his right to appeal under the administrative remedy

18   procedure.  (Id.)

19       Petitioner has submitted some documentation of the

20   administrative appellate process which reflects Petitioner's

21   challenges to the evidence made in May and June 2009 on the

22   ground that because Officer Gleason did not speak Spanish and

23   Petitioner did not and could not speak English, Officer Gleason's

24   report was impossible and groundless.  Petitioner asserted that

25   prior proceedings and the record would demonstrate that a

26   language barrier prevented him from communicating with prison

27   officers in English, and thus he suffered a violation of due

28   process of law due to the unreliability of the evidence, the

insufficiency of the evidence of guilt, and the fundamental

unfairness of the sanctions.   (Pet. 8-10.)

In June 2009, James E. Burrell, an administrator in the

privatization management branch, informed Petitioner that the

evidence was considered sufficient to support the finding, and it

was reasonable for the DHO to have made his determination.   (Pet.

16.)   Administrator Burrell stated the following:

> In response to your claim that the language barrier
> prevented you from communicating with staff about this
> incident when it first happened, you did not raise this
> issue during [any] part of the disciplinary process.
> Therefore, this is not relevant at this time.   The
> administrative remedy process is not an opportunity for
> you to present new evidence.

(Id.)

In October 2009, Petitioner's further appeal was denied by

Harrell Watts, Administrator of National Inmate Appeals, because

it was determined that each of Petitioner's rights to due process

of law was upheld during the discipline process, the greater

weight of the evidence supported the DHO's decision, and the

sanctions imposed were commensurate with policy.   (Id. at 11.)

It therefore appears that Petitioner exhausted his

administrative remedies.

IV.   Legal Standards

Title 28 U.S.C. § 2241 provides that writs of habeas corpus

may be granted by a district court within its jurisdiction only

to a prisoner whose custody is within enumerated categories,

including but not limited to custody under the authority of the

United States and custody in violation of the Constitution, laws,

or treaties of the United States.   28 U.S.C. § 2241(a), (c)(1),

(3).

Procedural due process of law requires that where the state has made good time subject to forfeiture only for serious misbehavior, then prisoners subject to loss of good-time credits must be given advance written notice of the claimed violation, a right to call witnesses and present documentary evidence where it would not be unduly hazardous to institutional safety or correctional goals, and a written statement of the finder of fact as to the evidence relied upon and the reasons for disciplinary action taken.  Wolff v. McDonnell, 418 U.S. 539, 563-64 (1974). Confrontation, cross-examination, and counsel are not required. Wolff, 418 U.S. at 568-70.

Further, where good-time credits are a protected liberty interest, the decision to revoke credits must be supported by some evidence in the record.  Superintendent v. Hill, 472 U.S. 445, 454 (1985).  The Court in Hill stated:

> We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S., at 106, 47 S.Ct., at 304. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. See ibid.; United States ex rel. Tisi v. Tod, 264 U.S. 131, 133-134, 44 S.Ct. 260, 260-261, 68 L.Ed. 590 (1924); Willis v. Ciccone, 506 F.2d 1011, 1018 (CA8 1974).

Superintendent v. Hill, 472 U.S. at 455-56.  The Constitution does not require that the evidence logically preclude any conclusion other than the conclusion reached by the disciplinary board; rather, there need only be some evidence in order to

1  ensure that there was some basis in fact for the decision.

2  <u>Superintendent v. Hill</u>, 472 U.S. at 457.

3       V.   <u>Analysis</u>

4       Preliminarily, the Court notes that Petitioner does not

5  claim that the procedures followed were constitutionally flawed.

6  The record reflects the adequacy and timeliness of the notice

7  given to Petitioner, the sufficiency of the opportunity to

8  testify or present evidence, and the adequacy of the statement of

9  the pertinent findings and evidence.

10       A.   <u>Some Evidence to Support the Disciplinary Finding</u>

11       At all times pertinent to the petition, 28 C.F.R. § 541.13

12  has provided that prohibited acts of the high category of

13  severity include a violation of Prohibited Act Code § 205, which

14  is defined simply as "Engaging in sexual acts."  28 C.F.R.

15  § 541.13, tab. 3.

16       Petitioner argues that the record lacks "some evidence" to

17  support the sanctions imposed because the facts as set forth in

18  Officer Gleason's report, which Petitioner contends was the only

19  evidence relied upon by the DHO, were "impossible" because due to

20  Officer Gleason's inability to speak Spanish and Petitioner's

21  inability to speak English, the conversation could not have

22  occurred.  (Opp. 4, doc. 14.)  Petitioner asserts that this "is

23  not based on personal knowledge."  (<u>Id.</u>)  He concludes that

24  Officer Gleason's assertions concerning any admissions made by

25  Petitioner are false and do not qualify as evidence.  (<u>Id.</u>)

26  Further, he argues that in light of Petitioner's later denial

27  that he told Officer Gleason that the erection was caused by his

28  female visitor's rubbing his penis, Officer Gleason's report

14

cannot constitute "some evidence" of the violation.  (Id.)
Finally, Petitioner asserts that Officer Gleason's report
constitutes only an accusation and thus is not evidence.  (Id. at
5.)

     In determining whether some evidence of the violation
supported the finding, the Court does not make its own assessment
of the credibility of witnesses or reweigh the evidence; however,
the Court must ascertain that the evidence has some indicia of
reliability and, even if meager, "not so devoid of evidence that
the findings of the disciplinary board were without support or
otherwise arbitrary."  Cato v. Rushen, 824 F.2d 703, 704-05 (9th
Cir. 1987) (quoting Superintendent v. Hill, 472 U.S. 445, 457
(1985)).  In Cato v. Rushen, 824 F.2d at 705, the Court found
that the Hill standard was not satisfied where the only evidence
implicating the inmate was another inmate's statement that was
related to prison officials through a confidential informant who
had no first-hand knowledge of any relevant statements or actions
by the inmate being disciplined and whose polygraph results were
inconclusive.  In contrast, evidence evaluated and found to
constitute "some evidence" supportive of various findings
includes the report of a prison guard who saw several inmates
fleeing an area after an assault on another inmate when no other
inmates were in the area, Superintendent v. Hill, 472 U.S. 456-
57; the statement of a guard that the inmate had admitted a theft
to supplement his income, coupled with corroborating evidence,
Bostic v. Carlson, 884 F.2d 1267, 1270 (9th Cir. 1989); an
inmate's admission and corroborating, circumstantial evidence,
Crane v. Evans, 2009 WL 148273 (N.D.Cal. Feb. 2, 2009), *3; and

1   an inmate's admission of having engaged in the violation plus an

2   officer's report of having heard a recording of the offending

3   conversation, <u>Dawson v. Norwood</u>, 2010 WL 761226, *1 (C.D.Cal.

4   March 1, 2010).

5        Here, the record contains some evidence to support the

6   disciplinary finding that was relied upon by the DHO, including

7   Petitioner's admission that he had an erection as a result of his

8   female visitor's having rubbed his penis, Petitioner's apology,

9   and Officer Gleason's observation of Petitioner's erection.

10  Although Petitioner asserts that there is a fatal lack of

11  personal knowledge, the record shows that Officer Gleason himself

12  observed Petitioner's condition and spoke with Petitioner.  (Pet.

13  12.)  Although it may be inferred from his report that Officer

14  Gleason speaks English, the record of the hearing is devoid of

15  evidence concerning the ability of either Officer Gleason or

16  Petitioner to speak Spanish.  Thus, there is no basis to find

17  that Officer Gleason's report was unreliable due to the officer's

18  inability to speak Spanish.  Further, Petitioner's denial of his

19  previous admission does not change the result because this Court

20  will not reweigh the evidence.

21       In addition, it appears that the DHO considered evidence

22  additional to Officer Gleason's report consisting of Petitioner's

23  statement to the UDC that he did not realize that his penis was

24  erect until the officer pointed it out to him.  The DHO evaluated

25  and expressly discounted as unreasonable Petitioner's claim that

26  he did not know that he had an erection.  (Pet. 14.)

27       Petitioner argues that evidence of having an erection in

28  proximity to a female is not sufficient to support a finding of

engaging in sexual acts in violation of § 205.  However, as the
foregoing analysis reflects, the evidence established not the
mere fact of Petitioner's erection, but also Petitioner's
participation in sexual contact with a female.  The word "sexual"
is defined as of, relating to, or involving sex.  Webster's Third
New International Dictionary of the English Language 2082 (2002).
Considering the plain meaning of the words, the Court concludes
that engaging in sexual contact with a member of the opposite sex
that results in an erection is action related to sex and thus
constitutes a sexual act or acts.

     In summary, the Court concludes that the determination of
the DHO was based on some evidence, and the procedures followed
met due process standards.  Petitioner has not established that
he was deprived of due process of law or that the prison
officials' disciplinary findings were arbitrary or unsupported.

                    B.   Authority of the Hearing Officer

     Petitioner argues that the disciplinary hearing officer, DHO
C. Logan (Pet. 15), was not an employee of the BOP, and thus he
was not authorized to impose disciplinary sanctions.  Petitioner
asserts that TCI is operated by a private corporation, Management
Training Corporation (MTC), and that TCI merely has a contract
with the BOP to house federal inmates.  Petitioner relies on 28
C.F.R. § 500.1(b), which contains definitions pertinent to the
BOP and Department of Justice (DOJ), and which defines "Staff" as
any employee of the BOP or Federal Prison Industries, Inc.  28
C.F.R. § 500.1(b).

     The Court has reviewed the regulations and concludes that
they do not exclude delegation of the authority to discipline to

contractor employees.  Regulations define the purpose and scope
of inmate discipline and special housing units.  The regulations
apply to inmates whose behavior is not in compliance with BOP
rules, and to "all persons committed to the care, custody, and
control (direct or constructive) of the Bureau of Prisons."  28
C.F.R. § 541.10(a).  Only "institution staff" may take
disciplinary action within BOP rules and institutional
guidelines.  28 C.F.R. § 541.10(b)(1), (2).  However, regulations
require the warden to delegate to institution staff members the
authority to hold the initial hearing.  28 C.F.R. § 541.15.  A
discipline hearing officer (DHO) is defined by regulation as a
one-person, independent, discipline hearing officer who is
responsible for conducting institution discipline hearings and
who imposes appropriate sanctions for incidents of inmate
misconduct referred for disposition following the hearing before
the unit discipline committee (UDC).  28 C.F.R. § 541.2.  Each
BOP institution shall have an independent DHO who must be trained
and certified as a DHO and meet the other requirements.  28
C.F.R. § 541.16.  The inmate may appeal a DHO's decision to the
regional director for the region where the inmate is currently
located.  28 U.S.C. § 542(d)(2).

     The pertinent statutory framework is also consistent with
the delegation of authority to institutional staff.  Title 18
U.S.C. § 4001(b)(2) provides that the Attorney General may
establish and conduct industries, farms, and other activities,
classify the inmates, and provide for their proper government,
discipline, treatment, care, rehabilitation, and reformation.
Title 18 U.S.C. § 4041 provides that the Attorney General may

appoint not only a director who is in charge of the BOP and who serves directly under the Attorney General, but also such additional officers and employees as the Attorney General deems necessary.  Title 18 U.S.C. § 4042(a)(3) provides in pertinent part that the BOP shall have charge of the management and regulation of all federal penal and correctional institutions and provide for the discipline of all persons convicted of offenses against the United States.

From these broad, statutory grants of authority to the Attorney General, it is clear that the Attorney General has been given by Congress the authority to appoint a director of the BOP and to delegate authority to discipline inmates to additional officers and employees.  That this authority has been delegated to DHO Curtis Logan is shown by the statement of work contract submitted by Respondent as pertaining to Logan's employment. (Mot. Ex. C.)  Petitioner does not dispute the authenticity of this document.  The provisions constitute the contract performance requirements for the "management and operation of the government owned-contractor-operated correctional institution in Taft, California."  (Mot. Ex. F 3.)  The contractor is required to ensure that the facility is operated consistently with the BOP's mission and in compliance with the contract, the Constitution, and all applicable law and regulations.  (Id. at 10.)  The contractor must adhere to the most current version of BOP written directives that establish policies.  (Id. at 14.) The BOP reserves the right to have staff on site to monitor contract performance.  (Id. at 16.)  Employment suitability is determined by using the BOP's guidelines and is subject to the

1  approval of the BOP; authority to approve all contractor staff

2  who work with inmates, to investigate alleged misconduct, and to

3  withdraw final employment approval authority for any employee

4  pursuant to specified standards, is retained by the BOP. (Id. at

5  21-22, 27.) All credentials are required to be kept current and

6  maintained for the duration of a person's contract performance.

7  (Id. at 24.)

8      The agreement expressly provides for a contractor employee

9  to be a DHO. The contract describes a DHO as a "government

10  trained and certified contractor employee responsible for

11  conducting disciplinary hearings." (Id. at 12.) It requires the

12  government to "provide specialized training to assist the

13  contractor in performing some specialized requirements,"

14  including discipline training for twenty-four (24) hours and DHO

15  training for twenty-four (24) hours, which is "mandatory as

16  described in Section J of the contract." (Id. at 28.)

17      Respondent has also submitted what purports to be a

18  certification from the United States Department of Justice,

19  Federal Bureau of Prisons, Management and Speciality Training

20  Center, Aurora, Colorado, of Curtis Logan's DHO (Contract)

21  Training dated July 1, 2004. (Mot. Ex. D.) Petitioner does not

22  dispute the authenticity of the document.

23      The Court concludes that the authority to perform the duties

24  of a DHO was delegated to contractor employee Logan.

25      Petitioner relies on 18 U.S.C. § 4013. Section 4013(a)

26  authorizes the Attorney General to make payments from funds

27  appropriated for federal prisoner detention for specified

28  necessities of life for persons held in custody of a United

1  States marshal pursuant to federal law under agreements with

2  state or local units of government or contracts with private

3  entities.  Section 4013(c) sets forth requirements for private

4  entities and procedures to be followed to effectuate the

5  designation of districts that need additional support from

6  private detention entities.  Although the provision refers to

7  "non-Federal" institutions, the section does not prohibit

8  delegation of BOP functions, let alone delegation to staff at

9  institutions like Tehachapi that are owned by the government and

10  run by a private entity subject to the previously described,

11  extensive oversight by the BOP.  (Mot. Ex. C 9.)

12      Petitioner relies on United States v. Cardona, 266 F.Supp.2d

13  558 (W.D.Tex. 2003).  In Cardona, it was held that for purposes

14  of federal criminal charges of possession of a prohibited object

15  as an inmate in a federal prison and attempting to provide it to

16  a fellow inmate in violation of 18 U.S.C. § 1791(a)(1) and (2),

17  an inmate of a correctional facility that was privately owned by

18  a corporation that subcontracted the facility to a county, which

19  in turn contracted with the United States to house federal

20  inmates along with local prisoners, was not an inmate of a

21  federal prison because the facility was not a federal

22  correctional, detention, or penal facility within the meaning of

23  18 U.S.C. § 1791(d)(4).  Id. at 559-62.  The court reasoned that

24  the mere presence of federal prisoners did not make the facility

25  a federal facility where control over the daily operations and

26  management of the institution and the custody and care of federal

27  prisoners was not in the Attorney General as set forth in 18

28  U.S.C. § 4001(b)(1).  The court employed traditional rules of

21

statutory construction and sought to avoid unconstitutional vagueness.

Petitioner similarly relies on <u>United States v. Rios-Flores</u>, 318 F.Supp.2d 452 (W.D.Tex. 2003), holding that the same institution was not a federal prison within the scope of 18 U.S.C. § 1791(d)(4).

The pertinent circumstances of the institution in the present case differ from that involved in <u>Cardona</u> and <u>Rios-Flores</u>. Here, the institution is federally owned, and the government retains key elements of control over the employees and the daily operations of the institution pursuant to the contractual provisions submitted to the Court. Further, it is noted that the court in <u>Rios-Flores</u> expressly declined to take a position on whether a privately run prison that contracted directly with the United States would be considered a federal penal facility. <u>Rios-Flores</u>, 318 F.Supp.2d at 453 n. 3.

In summary, the Court concludes that the authority to discipline inmates at TCI was validly delegated to DHO Logan.

VI.    <u>Recommendation</u>

The Court concludes that Petitioner has not demonstrated that the disciplinary proceedings and findings were unauthorized under federal law or violated his right to due process of law. Petitioner has not shown that he is entitled to relief pursuant to § 2241.

Accordingly, it is RECOMMENDED that the petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant

22

to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:    July 14, 2010**                          **/s/ Sheila K. Oberto**
                                     UNITED STATES MAGISTRATE JUDGE